UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PTC, Inc.,

            Plaintiff,

  v.

Centric Software, Inc. and Scott Starr,

            Defendants.

Civil Action No.

### COMPLAINT

For its complaint against defendants, Centric Software, Inc. ("Centric") and Scott Starr ("Starr"), plaintiff PTC, Inc. ("PTC") states and alleges as follows:

### I. Nature of the Action

1. This action seeks to redress breach of contract by Starr and tortious interference with contractual relations by Centric, and to prevent further damage, after Starr resigned from PTC and immediately went to work for a competitor, Centric, in direct contravention of his prior commitments to PTC.

2. Centric is a direct competitor of PTC. Starr's position with Centric breaches the Non-Competition and Non-Solicitation Agreement ("Agreement") that Starr signed on November 29, 2007 in exchange for substantial equity compensation in PTC. A true and accurate copy of the Agreement is attached as Exhibit A to this Complaint.

3. Centric was aware of Starr's obligations under his Agreement and used improper means to intentionally induce Starr to breach his Agreement, causing damage to PTC.

## II. Jurisdiction and Venue

4. PTC is a Massachusetts Corporation with a principal place of business in Needham, Massachusetts.

5. Centric is a foreign corporation with a principal place of business in Los Gatos, California, and, upon information and belief, transacts business in Massachusetts.

6. Starr is an individual residing in Cold Spring Harbor, New York who worked for PTC. Starr regularly traveled to Massachusetts in the course of his employment with PTC.

7. This Court has jurisdiction because there is complete diversity of parties and the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. § 1332.

8. Venue is proper under 28 U.S.C. § 1391. Further, the Agreement contains a choice-of-law provision dictating that Massachusetts law is to apply.

## III. Factual Allegations Common to All Counts

9. PTC is a global company that provides product lifecycle management solutions to customers in the consumer products, footwear, apparel, retail, and automotive industries.

10. Centric is a direct competitor of PTC that designs product lifecycle management software in the fashion, consumer goods, and footwear industries.

11. Starr was key employee of PTC. He worked for the company from 2002 through 2013. His final position with PTC was North America Sales Director, working with PTC's products in the consumer products and retail footwear and apparel industries.

12. During his employment, PTC provided Starr with broad access to its trade secrets, proprietary and confidential information, and know-how during his employment, including without limitation product plans for PTC's FlexPLM Product, its core offering for the retail footwear and apparel industry. In exchange for his receipt of confidential information and significant financial compensation including substantial equity compensation, Starr promised to abide by the Agreement.

13. The non-competition section of the Agreement provides that Starr:

> [A]grees that for a period of one (1) year after the termination of [Starr's] employment with PTC (whether voluntary or involuntary), [Starr] shall not either directly or indirectly, whether individually or as a principal, agent, officer, director, employee, consultant, partner, member or shareholder (other than as a the passive holder of less than 5% of the shares of a publicly traded company) of any firm, corporation or other entity or group or otherwise, alone or in association with any other individual, firm, corporation or other entity or group, engage in developing, offering, selling, or providing, or attempting to develop, offer, sell, or provide, directly or indirectly, to any person located in any market in which PTC provides products and/or services, any (A) products technology, or the intellectual property rights thereto, or (B) services, which products, technology and/or services are (x) the same as or similar to, or otherwise competing with, the products, technology or services provided or proposed to be provided by PTC and (y) products, technology and/or services about which [Starr] had knowledge or involvement while employed by PTC. Ex. A., § 8.

14. The non-solicitation section of the Agreement provides that Starr:

> [A]grees that for a period of one (1) year after the termination of [Starr's] employment with PTC (whether voluntary or involuntary), [Starr] shall not either directly or indirectly, whether individually or as a principal, agent, officer, director, employee, consultant, partner, member or shareholder (other than as the passive holder of less than 5% of the shares of a publicly traded company) of any firm, corporation or other entity or group:
>
> > . . . b. Make known to any person, firm or corporation the names and/or contact information of any of the customers of PTC or any other confidential information pertaining to them; or

       c. Solicit, divert or take away, or attempt to take away, the business or patronage of any of the customers or accounts, or prospective accounts, of PTC, insofar as they were identified, contacted, solicited or served by [Starr], either directly or indirectly, while [Starr] was employed by PTC. Ex. A., § 7.

15. The Agreement states that "the obligations imposed herein upon [Starr] shall apply during [Starr's] employment with PTC and shall survive the termination of [Starr's] employment." Ex. A., § 11.

16. On June 14, 2013, Starr resigned from PTC. During his exit interview, Starr refused to identify his new employer. When asked directly, he explicitly denied that he was going to work for Centric.

17. Upon information and belief, after leaving PTC, Starr accepted a position with Centric, in direct violation of his Agreement.

18. Upon information and belief, Starr's position with Centric is substantially similar to his position with PTC, in direct competition with PTC's business and violating the non-competition provision of the Agreement.

19. Upon information and belief, Starr has solicited at least one of PTC's customers, holding himself out to be a Vice President of Sales at Centric and informing the client that it had made a mistake in purchasing PTC's solution, which Starr himself had sold to the customer while employed at PTC.

20. Upon information and belief, Starr's actions have caused irreparable damage to PTC's business. He is using, or inevitably will use, PTC's confidential and proprietary information to advance Centric's business interest, including but not limited to discussing PTC product plans and soliciting PTC's customers, in direct violation of his Agreement.

21. On September 6, 2013, PTC sent Starr a letter, attached as Exhibit B, reminding Starr of his commitments under the Agreement and stating that it intended to enforce the provisions of the Agreement. PTC informed Starr that his actions violated the Agreement:

> PTC expects you to keep the promises that you made in the Agreement, including that you would not accept employment with a competitor of PTC, such as Centric, for a period of one-year [sic] following your resignation from PTC. Your actions in accepting employment with Centric and soliciting PTC's clients on its behalf not only violate the Agreement, but also will inevitably result in your use or disclosure of PTC's confidential information and expropriation of its goodwill.

22. Starr acknowledged receiving PTC's letter without providing any substantive response. Starr has still not substantively responded to PTC's letter.

23. PTC sent a letter to Centric on September 6, 2013 as well, attached as Exhibit C, reminding Centric that Starr is subject to the Agreement and that Starr's employment with Centric would be a violation of the Agreement.

24. Centric has provided no substantive response to PTC's letter beyond acknowledging its receipt.

25. This is not the first time Centric has hired away a PTC employee under dubious circumstances. In November, 2012, Centric hired a sales rep of PTC France. Curiously, that employee provided PTC with a story strikingly similar to the story that Starr provided to PTC upon his resignation. The employee in France told PTC that he was leaving to go work for a friend's company in an unrelated area of business. Based on this representation, PTC decided not to provide the employee with the compensation necessary under French law to obtain compliance with a non-competition covenant.

26. However, PTC later learned that, contrary to his representations, the employee had in fact had gone to work for Centric and immediately targeted a PTC customer. Upon information and belief, the employee in question had actually begun selling the Centric solution to the customer while he was still employed with PTC.

27. On June 12, 2013, PTC sent Centric a letter, attached as Exhibit D, informing Centric that:

> [A]ll PTC employees are bound by non-competition agreements that restrict them from joining PTC competitors (including Centric) for a period of one year following the termination of their employment with PTC. PTC intends fully to enforce those agreements.

28. As of Centric's receipt of PTC's June 12, 2013 letter, Centric was aware that Starr and all other PTC employees were bound by non-competition agreements.

29. On July 3, 2013, Centric responded to PTC's letter. In their response, attached as Exhibit E, Centric acknowledged PTC's non-competition agreements with its employees and stating "we do respect your need to maintain confidentiality and trust that your employees abide by their agreements with you."

30. Despite Centric's knowledge of and "respect" for PTC's non-competition agreements with its employees, Centric induced Starr to violate his Agreement by making him an offer of employment for a position Centric knew was in violation of Starr's Agreement and in direct competition with PTC's business.

31. Centric's illegal actions have caused irreparable harm to PTC.

## CAUSES OF ACTION

### Count I: Breach of Contract by Starr

32. PTC realleges and incorporates by reference as if fully set forth herein paragraphs 1-31 above.

33. Starr executed the Agreement, which constitutes a valid and binding contract between Starr and PTC.

34. PTC has performed all of its obligations under the Agreement.

35. Through the actions described above, Starr has breached the non-competition and non-solicitation provisions of the Agreement.

36. Given the egregious nature of his breaches, there remains a likelihood that Starr will continue to breach the Agreement and will inevitably use or disclose PTC's confidential information.

37. As a direct and proximate result of Starr's actions, PTC has suffered, and likely will continue to suffer, irreparable harm including, among other things, ongoing unfair competition by competitors, loss of business due to improper solicitation of PTC customers, and disclosure of its confidential information.

38. In addition, as a direct and proximate result of Starr's above-described actions, PTC has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

### Count II: Tortious Interference with Contractual Relations by Centric.

39. PTC realleges and incorporates by reference as if fully set herein paragraphs 1-38 above.

40. PTC has a contractual relationship with Starr.

41. Centric knew of this contractual relationship and acted intentionally to interfere with the relationship.

42. Centric acted with improper purpose or through improper means to interfere with PTC's contractual relationship with Starr.

43. As a direct and proximate result of Centric's actions, PTC has suffered, and likely will continue to suffer, irreparable harm including, among other things, ongoing unfair competition by competitors and disclosure of its confidential information.

44. In addition, as a direct and proximate result of Centric's above-described actions, PTC has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

### Count III: Unfair and Deceptive Trade Practices in Violation of G. L. c. 93A by Centric.

45. PTC realleges and incorporates by reference as if fully set herein paragraphs 1-44 above.

46. At all times relevant to this Complaint, PTC was a "person" engaged in "trade" or "commerce" in the Commonwealth of Massachusetts within the meaning of MASS. GEN. LAWS ch. 93A, §§ 1 and 11.

47. At all times relevant to this Complaint, Centric was a "person" engaged in "trade" or "commerce" in the Commonwealth of Massachusetts within the meaning of MASS. GEN. LAWS ch. 93A, §§ 1 and 11.

48. Centric has never been an employee of PTC.

49. By the actions described above, Centric has engaged in in unfair methods of competition and/or unfair trade practices in violation of Sections 2 and 11 of Chapter 93A of the Massachusetts General Laws.

50. Such actions were, and are, intentional, willful, wanton, and/or reckless, and were, and are, calculated to harm the PTC in its business affairs.

51. As a result of Centric's actions, PTC has suffered, and likely will continue to suffer, irreparable harm including, among other things, ongoing unfair competition by competitors and disclosure of its confidential information.

52. In addition, as a direct and proximate result of Starr's above-described actions, PTC has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

## PRAYERS FOR RELIEF

**WHEREFORE,** PTC respectfully requests the following relief:

1. A preliminary injunction restraining Starr from:
    a. working for Centric for a period of one year from the termination of his employment with PTC;
    b. engaging in any activity that would violate any of the provisions of the Agreement;
2. A permanent injunction incorporating the terms of the preliminary injunction;
3. Compensatory and consequential treble damages in an amount to be determined at trial;
4. Attorneys' fees, interest, and costs of suit; and
5. Such other and further relief as the Court deems just and equitable.

## JURY DEMAND

PTC demands a trial by jury of all claims so triable.

Respectfully submitted,

/s/ Nathanael J. C. Nichols
Timothy P. Van Dyck (BBO #548347)
Robert G. Young (BBO #650541)
Nathanael J. C. Nichols (BBO #685680)
EDWARDS WILDMAN PALMER LLP
111 Huntington Avenue
Boston, MA  02199-7613
617.239.0100
tvandyck@edwardswildman.com
ryoung@edwardswildman.com
nnichols@edwardswildman.com

Dated: October 15, 2013